# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| THERESE VERONICA NATTY, | : | CIVIL ACTION NO. |
| Alien # 041363391, | : | 2:11-CV-00156-RWS-SSC |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| ERICK HOLDER, JR., | : | HABEAS CORPUS |
| Attorney General, | : | 28 U.S.C. § 2241 |
| JANET NAPOLITANO, | : | |
| Secretary of the Department of | : | |
| Homeland Security, | : | |
| FELECIA S. SKINNER, | : | |
| U.S. ICE Field Office Director for the | : | |
| Atlanta, Georgia Field Office, | : | |
| STACEY STONE, | : | |
| Warden of Immigration Detention | : | |
| Facility, | : | |
| Respondents. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Petitioner, formerly a detainee at the North Georgia Detention Center (NGDC) in Gainesville, Georgia, filed this 28 U.S.C. § 2241 habeas corpus petition to challenge the constitutionality of her indefinite detention by United States Immigrations and Customs Enforcement (ICE) while she is awaiting removal from the United States.[1]  Now before the Court are the petition [Doc. 1]; Respondent Stone's Motion to Dismiss and to Substitute [Doc. 9]; Petitioner's motions to deny Stone's motion to dismiss [Docs. 11, 14]; Petitioner's motion for an emergency

---

[1] After Petitioner filed her petition, she was transferred to the Hall County Detention Center and her order of removal was vacated. (See Docs. 25, 26, 33).

AO 72A
(Rev.8/82)

injunction [Doc. 12]; the response of Respondents Holder, Napolitano, and Skinner ("the Federal Respondents") to the habeas petition [Doc. 15]; Petitioner's motions to dismiss the Federal Respondents' response [Docs. 18, 20, 21]; the Federal Respondents' supplemental response to the habeas petition [Doc. 25]; and Petitioner's motion to dismiss the supplemental response [Doc. 27].

## I. Procedural History

### A. Petitioner's Habeas Corpus Petition

On June 23, 2011, Petitioner filed a habeas corpus petition claiming that despite her October 6, 2005 order of removal, she cannot properly be removed to Jamaica because she was born in the U.S. Virgin Islands and is a citizen of the United States. (Doc. 1 at 4-6).[2] Petitioner sought immediate release from ICE custody because her post-removal detention had exceeded the six months authorized by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001).[3] (Doc. 1 at 6-9).

---

[2] Citations to the Petitioner's filings refer to the hard copy pagination of those filings. Citations to Respondents' filings refer to the pagination in the Court's CM/ECF system.

[3] In Zadvydas, 533 U.S. at 688-89, 701, the Supreme Court held that 8 U.S.C. § 1231(a)(6), which permits detention of an alien beyond the 90-day removal period following a final order of removal (see 8 U.S.C. § 1231(a)(1)(A)), does not permit indefinite detention but contains an implicit limitation that detention is permitted only for "a period reasonably necessary to bring about th[e] alien's removal from the United States," a period that is presumed to be six months.

2

## B. Background Facts

In their response to Petitioner's habeas corpus petition, the Federal Respondents offer the following statement of facts, which appear to be undisputed. (Doc. 15 at 2-8; see Doc. 16-1, Declaration of Traci S. Mills ("Mills Decl.")). Petitioner was admitted into the United States on October 25, 1987. (Doc. 15 at 2; Mills Decl. ¶ 6). On December 10, 1996, in her application to become a citizen of the United States, Petitioner swore that she was a citizen of Jamaica. (Doc. 15 at 2; Mills Decl. ¶ 10). On December 21, 1998, based on her "lengthy criminal history," Petitioner received a Notice to Appear, charging her as removable from the United States due to a firearms conviction. (Doc. 15 at 2-3; Mills Decl. ¶ 13). Petitioner was ordered removed on August 4, 1999, and after a series of administrative proceedings, she was ultimately ordered removed, *in absentia*, on October 6, 2005. (Doc. 15 at 3-5; Mills Decl. ¶¶ 15-16, 18, 21-22, 24).

ICE located Petitioner and took her into custody on October 28, 2010 but later released her, under an Order of Supervision, to care for her child. (Doc. 15 at 5; Mills Decl. ¶ 25). On December 10, 2010, Petitioner informed ICE that she was no longer willing to comply with the conditions of her supervised release, and ICE reacquired custody over her that same day. (Doc. 15 at 5; Mills Decl. ¶ 27). Petitioner subsequently claimed to be an American citizen born in the U.S. Virgin

Islands. (Doc. 15 at 5; Mills Decl. ¶ 28). Because of Petitioner's earlier representations that she was a citizen of Jamaica, a number of steps were taken to verify that she was a citizen of Jamaica, and "on or about August 18, 2011, the Jamaican Consulate acknowledged that Petitioner was a Jamaican Citizen." (Doc. 15 at 5-8; Mills Decl. ¶¶ 28 *et seq.*). ICE was attempting to obtain travel documents to remove Petitioner from the United States (Doc. 15 at 8; Mills Decl. ¶¶ 45, 47-48) when on September 7, 2011 the Board of Immigration Appeals (BIA) reopened Petitioner's immigration case (Doc. 25 at 2; <u>see</u> Doc. 26-1 at 3). The BIA remanded Petitioner's case to an Immigration Judge for further proceedings, thus effectively vacating Petitioner's final order of removal from the United States. (<u>See</u> <u>id.</u>).[4]

## II. <u>Respondent Stone's Motion to Dismiss [Doc. 9]</u>

In his brief in support of his motion to dismiss and supporting affidavit, Respondent Stone asserts that he is an employee of the Corrections Corporation of America ("CCA"), the company that operates the NGDC, "a noncriminal holding

---

[4] The BIA Order, referring to Petitioner in this case as "the respondent," reads, in pertinent part:

> Considering the totality of circumstances and evidence presented in the respondent's motion, including the respondent's detention in State custody at the time of her October 6, 2005, scheduled hearing that was conducted in absentia, the proceedings are reopened under the provisions of 8 C. F.R. § 1003.2(a), and the record will be remanded to the Immigration Judge to provide the respondent an opportunity to pursue any pertinent applications for relief from removal. . . .
>
> FURTHER ORDER: The Board's June 28, 2011, decision dismissing the respondent's appeal is vacated.

4

facility for alien detainees," under an intergovernmental service agreement with ICE. (Doc. 9 at 3; Doc. 9-1, Stone Aff. ¶ 2). According to Stone, Petitioner is not in his custody because he "has no power to hold or release this or other detainees." (Doc. 9 at 3; Doc. 9-1, Stone Aff. ¶ 3). Therefore, he argues, he is not a proper respondent to Petitioner's habeas corpus petition. (Doc. 9 at 3-4).

"[I]n habeas challenges to present physical confinement- -'core challenges'-- the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not . . . [a] remote supervisory official." Rumsfield v. Padilla, 542 U.S. 426, 434-35 (2004) (noting that "there is generally only one proper respondent to a given prisoner's habeas petition. . . .[,] 'the person' with the ability to produce the prisoner's body before the habeas court"). The website for the North Georgia Detention Center lists Stacey Stone as the warden of that facility. See CCA, www.cca.com/facility/north-georgia-detention-center (last visited Jan. 26, 2012). Accordingly, Stone was the "one proper respondent" to Petitioner's petition when she filed it.

However, because Petitioner has now been transferred to another facility, it serves no purpose for Stone to remain as a Respondent, as he himself no longer has the "legal authority to effectuate [Petitioner's] release." See Padilla, 542 U.S. at 441; see also Rolin v. Parole Comm'n, No. 10-00540-CG-N, 2011 U.S. Dist. LEXIS 24273, at *9-10 (S.D. Ala. Feb. 8, 2011) (noting that petitioner's "transfer

5

to [an] Oklahoma [facility] did not divest [the Alabama District] Court of jurisdiction over his § 2241 habeas petition," and recommending that petitioner "be ordered to amend his petition to add the warden where he is presently incarcerated, and thus his present custodian for purposes of his habeas petition seeking immediate release"), adopted by 2011 U.S. Dist. LEXIS 24035 (S.D. Ala. Mar. 9, 2011). Moreover, as noted above, it appears that Petitioner's challenge to her confinement at the NGDC is now moot. Accordingly, the undersigned **RECOMMENDS** that Stone's motion to dismiss [Doc. 9] be **GRANTED**, that he be dismissed from this action, and that Petitioner's motions to deny Stone's motion to dismiss [Docs. 11, 14] be **DENIED**.

### III. Petitioner's Motion for an Emergency Injunction [Doc. 12]

In her motion for an emergency injunction, filed while she was still in custody at the NGDC, Petitioner claimed that her life was in danger as a result of threats made against her by NGDC personnel. (Doc. 12 at 1-2). Petitioner sought an "Emergency Injunction . . . to be removed . . . for [her] Safety." (Id. at 2). Because Petitioner has been removed from the NGDC, her motion for an emergency injunction for her removal is now moot. See McKinnon v. Talladega Cnty., 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); accord Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir.)

(unpublished decision), cert. denied, 131 S. Ct. 517 (2010); see also Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001) ("If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the [petitioner] or appellant meaningful relief, then the case is moot and . . . dismissal is required because mootness is jurisdictional." (citation omitted)). Accordingly, the undersigned **RECOMMENDS** that Petitioner's motion for an emergency injunction [Doc. 12] be **DENIED as moot**.

## IV. The Federal Respondents' Responses [Docs. 15, 25]

Initially, the Federal Respondents argued in their response dated August 26, 2011 that Petitioner's ongoing detention, although in excess of the presumptively reasonable six-month period set forth in Zadvydas, was permissible because the arrangements to remove Petitioner to her native Jamaica were approaching fruition. (See generally Doc. 15). On September 21, 2011, however, the Federal Respondents filed a supplemental response, informing the Court that the BIA had reopened Petitioner's immigration case on September 7, 2011, and that she was no longer under a final order of removal from the United States. (Doc. 25 at 2). They argue that Petitioner's habeas petition challenging her final order of removal and the allegedly excessive length of her post-removal detention is now moot, as Petitioner is no longer under a final order of removal and is now in pre-removal detention. (Id. at 3-6). They argue further that

7

pre-removal detention is permissible under the authority of Demore v. Kim, 538 U.S. 510 (2003), so that even if the Court were to impute to Petitioner's June 2011 petition an intention to challenge Petitioner's current pre-removal detention, such a challenge would fail to state a claim. (Id. at 6). They also argue that Petitioner has failed to exhaust her administrative remedies with respect to her pre-removal detention—"there has not been any bond determination hearing, bond redetermination request by Petitioner, or appeal of an immigration judge's bond determination"—and, therefore, she may not proceed on an implicit challenge to her pre-removal detention because administrative exhaustion is a prerequisite to seeking habeas relief from such detention. (Id. at 6-8). Petitioner has offered no substantive response to the Federal Respondents' arguments.

As noted above, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the [petitioner] or appellant meaningful relief, then the case is moot and . . . . dismissal is required because mootness is jurisdictional." Najjar, 273 F.3d at 1336. Because it appears that Petitioner is no longer under a final order of removal or in post-removal detention, it also appears that her June 2011 habeas corpus challenge to her removal order and her Zadvydas challenge to her detention are now moot.[5]

---

[5] The undersigned makes no recommendation with respect to whether Petitioner, in another petition, may be able to challenge her current pre-removal detention resulting from the BIA's decision re-opening "the proceedings . . . to provide [Petitioner] an opportunity to pursue any pertinent applications for relief from removal." (Doc. 26-1 at 3). "On a warrant issued by the

8

Accordingly, the undersigned **RECOMMENDS** that Petitioner's motions to dismiss the Federal Respondents' response [Docs. 18, 20, 21] and motion to dismiss their supplemental response [Doc. 27] be **DENIED**.

## V. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Respondent Stone's Motion to Dismiss and to Substitute [Doc. 9] be **GRANTED**; that Petitioner's motions to deny Respondent Stone's motion to dismiss [Docs. 11, 14] be **DENIED**; that Petitioner's motion for an emergency injunction [Doc. 12] be **DENIED as moot**; that Petitioner's motions to dismiss the Federal Respondents' response [Docs. 18, 20, 21] and motion to dismiss their supplemental response [Doc. 27] be **DENIED**; and that the habeas corpus petition [Doc. 1] be **DISMISSED as moot**.

---

Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "The Attorney General's discretionary judgment regarding the application of this section [8 U.S.C. § 1226] shall not be subject to review [and n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). The Supreme Court stated in Kim that "[d]etention during removal proceedings is a constitutionally permissible part of that process," in large part because the proceedings are of "limited" duration. Kim, 538 U.S. at 531. Nevertheless, the Supreme Court also stated, "Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar [a] constitutional challenge to the legislation authorizing . . . detention without bail." Kim, 538 U.S. at 517; see also Camacho-Salinas v. United States Attorney Gen., 460 F.3d 1343, 1347 (11th Cir. 2006) (stating that federal courts "retain jurisdiction to review constitutional claims or questions of law" (internal quotation marks omitted)). However, whether there are grounds to support a challenge to Petitioner's current detention is a question not presented in the pending petition.

9

It is well-established, based on the language of 28 U.S.C. § 2253(c)(1), that "a federal prisoner who proceeds under § 2241 does not need a COA," i.e., a certificate of appealability, to appeal the denial of a § 2241 petition. Sawyer v. Holder, 326 F.3d 1363, 1364 n.3 (11th Cir.), cert. denied, 540 U.S. 900 (2003). Although the undersigned has located no case law on point, in this or any other Circuit, the language of § 2253(c)(1) suggests that a detainee of an agency of the federal government who challenges her detention via § 2241, as Petitioner does here, also does not need a COA to proceed on appeal. See 28 U.S.C. § 2253(c)(1) (requiring a COA in two circumstances: (A) when "the detention complained of arises out of process issued by a State court," or (B) when the appellant challenges "the final order in a proceeding under section 2255"). Because Petitioner fits into neither category set forth in § 2253(c)(1), the undersigned concludes that she does not require a COA to proceed on appeal in this matter and therefore makes no recommendation in that regard.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED and DIRECTED** this 26th day of January, 2012.

AO 72A
(Rev.8/82)

*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge